FILED

2016 Aug-02  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BARBARA LINDSEY GREEN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| **v.** | } | **Case No.:  4:15-CV-1054-RDP** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Barbara Green ("Plaintiff" or "Green") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB").  *See also*, 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.      Proceedings Below

Plaintiff filed her application for disability and DIB on May 7, 2012 in which she alleged that her disability began on September 10, 2010.  (Tr. 184).  Plaintiff's application was initially denied by the Social Security Administration on July 25, 2012.  (Tr. 122).  Plaintiff requested and received a hearing before an Administrative Law Judge. (Tr. 140).  The hearing was set for August 15, 2013 with Administrative Law Judge Renita Barnet-Jefferson ("ALJ").  (Tr. 147-51).  In her decision, dated November 22, 2013, the ALJ determined that, contrary to her assertion otherwise, Green had not been under a disability within the meaning of Sections 216(i) and 223

(d) of the Social Security Act since September 10, 2010.  (Tr. 61).  On January 24, 2014, Plaintiff requested review from the Appeals Council and her request was denied on April 24, 2015.  (Tr. 1, 15).  This denial was the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.    Facts

Plaintiff was forty-seven years old at the time of her hearing.  (Tr. 86).  She alleges that she has been disabled since September 10, 2010 because of high blood pressure, fibromyalgia, arthritis, lupus (dormant), and panic and anxiety attacks. (Tr. 108).  At the hearing, she also alleged that she suffers from depression and insomnia.  (Tr. 90, 96).  She has an eleventh grade education and completed her GED.  (Tr. 88).  Plaintiff has worked numerous jobs in her lifetime, including building electrical panels for buses, sewing, spinning yarn, waitressing, and fast food service.  (Tr. 97-98).  She did not work any of these jobs during the more than four-and-a-half year period prior to her hearing.  (Tr. 98).

At her hearing, Plaintiff testified that she has fibromyalgia, high blood pressure, panic and anxiety attacks, and that she experiences a lot of pain.  (Tr. 88).  She stated that she takes pain medications and while they help they also make her "groggy and sleepy."  (Tr. 88).  She alleged that her pain is so severe that it affects her ability to sleep through the night and she is only able to sleep a few hours at a time (Tr. 89).  She claimed that her activities are limited during the day and mainly she watches television and looks at magazines, but she has trouble remembering what she reads or watches.  (Tr. 89).  She can do light housework, such as light dusting, but not much more than that due to the pain.  (Tr. 90).  She is depressed and cries a lot and has daily panic attacks (Tr. 90, 92).  She says that she has no interest in doing activities which she used to enjoy because of her depression and her alleged inability to do those things

(*e.g.*, playing with her grandchildren).  (Tr. 90).  She rated the pain level in her back and knees as an eight out of ten and the pain in her hands at a 5 or 6, even with pain medication.  (Tr. 94).  She stated that she can only walk or sit for around ten minutes at a time and can only lift around five pounds.  (Tr. 95-96).  She spends most of her day lying down.  (Tr. 95).

During the alleged period of disability, Plaintiff received treatment from Oxford Family Practice, Quality of Life Health Services, Inc, Northeast Alabama Regional Medical Center Radiation/Oncology, and The Crawford Clinic. (Tr. 418, 437, 444, 445).  She also received treatment from Dr. Wyndol Hamer; however, this treatment was sought after the ALJ's final decision in November 22, 2013.  (Tr. 22-45).  On November 11, 2011, she was diagnosed with fibromyalgia, obesity, and anthropathy at Quality of Life Health Services and was prescribed Flexeril and Savella.  (Tr. 393).  The doctors at Oxford Family Practice also diagnosed her with hypertension and anxiety on March 8, 2012, and fibromyalgia and dyslipidemia on March 12, 2012.  (Tr. 418-19).   Oxford Medical prescribed her Clonazepam and Flexeril.  (*Id.*). Plaintiff has taken numerous other medications during her alleged period of disability, including: Lisinopril, Cymbalta, HCTZ, Ibuprofen, Lyrica, Darvocet, and Lortab. (Tr. 401, 421, 437-38). In addition, she was diagnosed with breast cancer on August 22, 2012. (Tr. 445). She received treatment for this, including chemotherapy and radiation, and was in remission at the time of her hearing.  (Tr. 87). Plaintiff also had surgery to remove the cancerous lump in March 2013 (Tr. 470-73).

After filing for disability, a physician and a psychologist both evaluated Plaintiff on July 14, 2012 and July 17, 2012, respectively.  (Tr. 427-30, 434).  The physician, Dr. Antonio Rozier diagnosed her with degenerative disc disease and fibromyalgia.  (Tr. 430).  He also said that she suffered from "mildly decreased grip strength in holding objects" but had normal sensation in all

five fingers.  (*Id.*).  In terms of Plaintiff's abilities, Dr. Rozier determined that she could walk without assistance and sit comfortable, but she did have some reduced range of motion in her neck and back. (Tr. 429-30).  The psychologist, Dr. Dana Davis, diagnosed her as suffering from lingering symptoms of bereavement following the death of her mother, and Generalized Anxiety Disorder.  (Tr. 434).  She described Plaintiff's symptoms as "mild-to-moderate."  (*Id.*).   At the time of Dr. Davis's examination, she was taking Lisinopril, clonazepam, hydrochlorot, and Percogesic.  (Tr. 433).  In her evaluation, Dr. Davis noted that Plaintiff was able to drive on her own and is largely independent.  (*Id.*).  She told Dr. Davis that she spends her time watching television, visiting with her boyfriend, children, and grandchildren, gardening, painting, and puzzles. (*Id.*).  In addition, Dr. Davis reported that Plaintiff was cooperative, oriented, engaged in logical thought process, mildly dysphoric, and her affect was "appropriate with occasional tearfulness when discussing her mother."  (Tr. 434).

In December 2013, Dr. Hamer diagnosed Plaintiff with osteoarthritis, musculoskeletal pain, malaise and fatigue, kyphoscoliosis/scoliosis, panic disorders with agoraphobia, hypertension, mixed hyperlipidemia, and joint pain in multiple sites.  (Tr. 22-45).  On January 27, 2014, he diagnosed her with cervicalgia, depressive disorder, hyperlipidemia, sinusitis, bronchitis, and degenerative disc disease.  (Tr. 29-37).  Dr. Hamer also found that she had moderate tendering to palpation in her back (although this finding is inconsistent with the opinion of another doctor who examined Plaintiff in May 2013 and determined this was not an issue).  (Tr. 30, 494).  Dr. Hamer also ordered a bone density study, which came back normal, and an MRI, which showed only mild posterior disc protrusion at C5-6 and no protrusion at other discs. (Tr. 17, 20).  He later diagnosed her with insomnia and generalized anxiety disorder.  (Tr.

38-45).  Plaintiff also contends that Dr. Hamer filled out a Physical Capacities Form that stated

Plaintiff:

> can sit 3 hrs at one time, stand 2 hrs at one time, walk 3 hrs at one time; would
> expect her to be lying down, sleeping, sitting w/ legs propped x3 hrs in 8 hr
> workday; limitations existed back to 9/10/10; last greater than 12 months; can
> perform a task for 2 hrs before needing a rest/break; can maintain
> attention/concentration x2 hrs.

(Pl.'s Mem. 24).  However, Plaintiff's contentions notwithstanding, it does not appear this piece

of evidence was before the ALJ.

## III.   ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.

First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.

20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing

significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is

work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. §

404.1520(b).    Second, the ALJ must determine whether the claimant has a medically

determinable impairment or a combination of medical impairments that significantly limits the

claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such

impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether

the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under

the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ

must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in a substantial gainful activity since her alleged onset date of September 10, 2010. (Tr. 63). The ALJ also determined that Plaintiff has six severe impairments including: fibromyalgia, degenerative disc disease cervical spine, obesity, hypertension, status post lumpectomy, Generalized Anxiety Disorder, and depression (*id.*), but did not suffer from any of the listed impairments under 20 C.F.R Part 404, Subpart P, Appendix 1. The ALJ also concluded that Plaintiff's physical impairments, "singularly and in combination" were not enough to meet the requirements of the listing for Musculoskeletal Systems (Tr. 64), and she does not meet any of the standards for the mental impairment listing as she had no restrictions "in activities of daily living" and only moderate difficulties in social functioning and with concentration, persistence, or pace. (*Id.*). In addition, Plaintiff never experienced any episodes of decompensation as required by the listing. (*Id.*).

6

The ALJ determined that Plaintiff does have some residual functional capacity to perform certain types of work.  (Tr. 65).  She found that Plaintiff had the capacity to perform:

> sedentary work as defined in 20 C.F.R. 404.1567(a) except with the following limitations: with a sit/stand option at will; push/pull as much as can lift/carry; can frequently use bilateral hands for hand controls; can handle with bilateral hands; occasionally climb ramps and stairs; never climb ladders or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights, around moving mechanical parts; and avoid concentrated exposure to humidity and wetness and extreme cold. She is limited to simple, routine, and repetitive tasks; occasionally interact with the public; and limited to tolerating few changes in routine work setting.

(*Id.*).  In light of Plaintiff's residual functional capacity, the ALJ determined that she is no longer capable of performing any of her past relevant jobs as they would be classified as light or medium as opposed to sedentary.  (Tr. 75).  However, after considering the testimony of the Vocational Expert, the ALJ found that there are jobs "that exist in significant numbers in the national economy" that Plaintiff is capable of performing given all of her impairments.  (Tr. 76).  Based on her impairments, Plaintiff should be able to perform any job classified as sedentary, unskilled.  (*Id.*).  For example, she could work as an addressing clerk, table worker, or inspector with thousands of these jobs available regionally and nationally.  (*Id.*).  Based on Plaintiff's residual functional capacity and the possible jobs that exist for her in the national economy, the ALJ determined that she "had not been under a disability as defined in the Social Security Act, from September 10, 2010, through the date of this decision."  (*Id.*).

## IV.  Plaintiff's Argument for Reversal

Plaintiff makes six arguments on appeal: (1) the Appeals Council failed to consider records from Dr. Hamer, the treating physician, that discussed Plaintiff's treatment after the date of decision (Pl.'s Mem. 18); (2) the Appeals Council erred by not giving substantial weight to Dr. Hamer's opinion (Pl.'s Mem. 24); (3) the ALJ failed to consider all of Plaintiff's severe

impairments (Pl.'s Mem. 26); (4) the ALJ did not state adequate reasons for finding Plaintiff's testimony was less than credible (Pl.'s Mem. 27); (5) the ALJ erred in drawing adverse inferences from Plaintiff's lack of medical treatment; and (6) the ALJ's decision was not based on substantial evidence because the hypothetical question posed to the Vocational Expert did not accurately state Plaintiff's impairments.

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.   Discussion

After careful review, the court concludes the ALJ's findings are supported by substantial evidence and that she correctly applied the law.

### A.   The Appeals Council Properly Considered New Evidence and Denied Plaintiff's Request for Review.

A claimant is generally allowed to introduce new evidence at each stage of the process and the Appeals Council must consider the evidence if it is new, material, and chronologically relevant. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th. Cir. 2007).  Under this standard, evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).   In order to be chronologically relevant, the new evidence must "relate to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b) (2016).  Evidence is not rendered chronologically irrelevant solely because it is dated after the ALJ decision if it relates back to the relevant period of time. *See Washington v. SSA*, 806 F.3d 1317, 1322 (11th Cir. 2015) (holding that treating physician's opinion give after ALJ decision was still chronologically relevant because Plaintiff told the doctor he had experienced hallucinations before and the doctor examined medical records from the relevant period).  When a claimant presents new evidence, the Appeals Council must grant review when the ALJ's decision is against the weight of the current record. *Harrison v. Comm'r of Soc. Sec.*, 569 F.Appx. 874, 881 (11th Cir. 2014).

The opinion of a treating physician is normally entitled to substantial weight, but that rule is inapplicable when the opinion at issue is not based on objective medical evidence or is merely conclusory. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). There is no

error when the Appeals Council refuses to remand based on new medical evidence that is conclusory. *See Harrison*, 569 F.Appx. at 881.

In the present case, the record shows that Plaintiff submitted thirty-six pages of medical records from Dr. Hamer to the Appeals Council. (Tr. 2). Those records were dated from December 30, 2014 through August 30, 2014. (*Id.*). The Appeals Council properly considered this evidence in their decision, but decided that it was not chronologically relevant because it does not relate to the time period prior to the ALJ's decision. (*Id.*). Dr. Hamer did not treat Plaintiff until December 2013, the month after the ALJ decision; therefore, his diagnoses are not related to the relevant time period. (*Id.*).

Plaintiff has also claimed that she submitted a Physical Capacities Form, completed by Dr. Hamer on May 30, 2014, that stated she would have to lay down or sit with her legs propped up at least three hours in an eight-hour work day and that this condition would have existed on September 10, 2010, the alleged onset date.[1] (Pl.'s Mem. 24). However, nothing in the record indicates this evidence was ever before the Appeals Council. (Tr. 1-4). There is no mention of it in the decision of the Appeals Council, and it was not included in the record.

## B.   The Appeals Council Had Good Cause to Discount Dr. Hamer's Opinion in the Physical Capacities Form.

The Eleventh Circuit has established that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."

---

[1] The court notes that even if this form were before the Appeals Council, any failure to consider it would not be an error because it would not affect the outcome of this case. Based on Plaintiff's assertions, such a form would seem to be chronologically relevant under *Washington* because it relates back to the alleged onset date. (Pl.'s Mem. 24). But there is another issue related to the missing form. There is no evidence that Dr. Hamer (1) examined any of Plaintiff's prior medical records from this time or (2) based his opinion on anything other than her subjective complaints (Pl.'s Mem. 19, 21). Therefore, his opinion is not based on objective medical evidence and is merely conclusory (that is, he merely stated that Plaintiff had limitations but gave no reason for his conclusion) and therefore would not be entitled to any significant weight. This renders the evidence immaterial as it would not change the administrative outcome and therefore, the Appeals Council would not be required to consider the evidence.

10

*Crawford*, 383 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). However, the treating physician's opinion may be properly discounted "when it is not accompanied by objective medical evidence or is wholly conclusory."   *Crawford*, 363 F.3d at 1159.

In Plaintiff's case, Dr. Hamer, one of her treating physicians, completed a Physical Capacities Form that stated she can "sit three hours at a time, stand two hours at a time, walk three hours at one time" and she would have to lie down or prop her legs up three hours in an eight-hour work day.  (Pl.'s Mem. 24).  He also stated that these limitations would have existed back to September 10, 2010, the alleged onset date.  (*Id.*).  There is no evidence that this opinion was even before the Appeals Council when the Council made its decision. (Tr. 2). But even if this piece of evidence was before the Council, it nevertheless would have been justified in discounting it.  Dr. Hamer first met with Plaintiff in December 2013, a month after the ALJ decision.  (Tr. 22).  He had not met with her during the time period between the alleged onset date and the date of the ALJ decision.  (*Id.*).  In making his determination that Plaintiff had the above mentioned limitations back to her alleged onset date, the record shows Dr. Hamer did not rely on objective medical evidence and his opinion was conclusory.  He did not examine Plaintiff during the relevant time period; therefore, in making this determination he could only rely on her subjective complaints and what she told him she could (or could not) do during that time period. (*Id.*).  In addition, Dr. Hamer did not explain how he arrived at the conclusion that Plaintiff could only sit or stand for periods or time or that these limitations existed in 2010; therefore, his opinion was conclusory.  (Pl.'s Mem. 24).

## C.       The ALJ Properly Considered All of Plaintiff's Severe Impairments

The burden is on a claimant to prove that she has a severe impairment. *Bowen v. Yuckart*, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a person's] physical or mental ability to do basic work activities" without taking that person's age, education, or work experience into consideration. 20 C.F.R. § 404.1520(c) (2016). The severe impairment must be proven by medical evidence. 20 C.F.R. § 404.1508 (2016). In addition, the ALJ has no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Street v. Barnhart*, 133 F. Appx. 621, 627 (11th Cir. 2005). It is only necessary to find a single severe impairment for a claimant's case to proceed past the second step of the analysis. *Burgin v. Comm'r Soc. Sec.*, 420 F. Appx. 901, 902 (11th Cir. 2011).

In the present case, Plaintiff only claimed the disabilities of "high blood pressure, fibromyalgia, arthritis, lupus, and panic and anxiety attacks" in her initial application for disability. (Tr. 108). At her hearing, she alleged that she suffered from fibromyalgia, high blood pressure, and was in a lot of pain. (Tr. 88). She also claimed that she suffered from depression, arthritis, degenerative disc disease, and lupus. (Tr. 90-93). Plaintiff now claims that her severe impairments include Sicca Syndrome, osteoarthritis, idiopathic scoliosis, and coronary artery disease.[2] (Pl.'s Mem. 26). But she never mentioned coronary artery disease, Sicca Syndrome, or osteoarthritis in either her application or to the ALJ at her hearing. Therefore, the ALJ had no obligation to investigate these claims. Plaintiff failed to meet her burden of showing that these additional impairments would interfere with her abilities to perform basic work activities.

---

[2] Plaintiff did mention that she has been previously diagnosed with lupus at her hearing; however, she admitted that it was in a dormant state. (Tr. 93). Similarly, although she did state that she had some form of scoliosis and it causes her pain, she did not specifically claim it as a severe impairment. (Tr. 91).

Finally, even if the ALJ erred in not considering these additional impairments to be severe (and, to be clear, the court finds there was no such error), any error was harmless error. The ALJ found that Plaintiff suffers from a variety of severe impairments. (Tr. 63). This was enough to advance the analysis to Step Three.  At that step of the analysis, the ALJ could have still found her to be disabled based on these impairments.  After all, once the ALJ moves past Step Two of the analysis, she is required to consider "the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin*, 420 F. Appx. at 902.  It follows that even though the ALJ did not consider these impairments severe, she was still required to take them into consideration in determining Plaintiff's capabilities.  In her decision, the ALJ considered all of the medical issues of which Plaintiff produced evidence, including the record evidence related to lupus, Sicca Syndrome, osteoarthritis, and scoliosis (Tr. 68, 72).

### D.   The ALJ Adequately Stated Her Reasons for Discrediting Plaintiff's Testimony

In order to establish disability based on pain testimony, a claimant must make an appropriate showing under the following three-part test: she must establish "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  It is for the ALJ to determine the credibility of Plaintiff's pain testimony. Of course, the ALJ must articulate specific reasons when discrediting a claimant's testimony. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  If the ALJ does not articulate specific reasons for discrediting a claimant's testimony, the testimony must be accepted as true. *Id.*  In addition, the ALJ's decision to discredit Plaintiff's subjective testimony must be based on substantial evidence. *Doughtry v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Here, the ALJ articulated specific reasons supporting her determination that Plaintiff's testimony "regarding her impairments" is only "partially credible." (Tr. 74). The ALJ set out concrete examples of why she concluded that Plaintiff's activities are not as limited as claimed in her testimony. (*Id.*). She also pointed to specific inconsistencies in Plaintiff's testimony, such as this: while Plaintiff claimed to have difficulties following written instructions, she had no difficulty completing written function reports for her application. (*Id.*). Plaintiff argues that her participation in daily activities does not necessarily disqualify her from receiving disability benefits. (Pl.'s Mem. 28). But that argument misses the mark. An ALJ is permitted to take into consideration a claimant's performance of daily tasks in evaluating her capabilities. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). In addition, the ALJ noted Plaintiff's infrequent trips to the doctor and the relatively conservative treatments ordered to address her impairments. (Tr. 74)). Generally, this type of conservative treatment may tend to negate a claimant's claim of disability. *Sheldon v. Astrue*, 268 F. Appx. 871, 872 (11th Cir. 2008).

Finally, the ALJ considered Plaintiff's testimony that she suffered from negative side effects from her medications. As the ALJ noted, the medical evidence from her doctors did not support that claim. (*Id.*). In this case, the ALJ adequately stated her reasons for discrediting Plaintiff's pain testimony, and the ALJ's findings are supported by substantial evidence.

### E.      The ALJ Did Not Err in Drawing Adverse Inferences from Plaintiff's Lack of Medical Treatment

An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR No. 97-7p, 1996 SSR LEXIS 4 at *22; *Grier v. Colvin*, 117 F. Supp. 3d 1335, 1344-45 (N.D. Ala. 2015) (holding that ALJ failed to consider other explanations because he did not ask claimant any questions about

why she did not seek medical treatment).[3]   And when an ALJ "'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for the failure, [the appellate court] will remand for further consideration."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (holding that reversible error existed when ALJ only considered a few other factors in the middle of the paragraph about conservative treatment and did not analyze them further).  However, it is not reversible error when an ALJ bases her determination on "other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability."  (Tr. 74).

In the present case, Plaintiff contends that the ALJ drew an adverse inference from her lack of medical treatment when she stated: "the only treatment she received was pain medications. She had not had any rehabilitation, spinal injections or surgery" and "she has never been treated in the mental health setting" prior to her consultative exam when she applied for disability.  (Tr. 72-73).   The court agrees, but to the extent the ALJ erred, any error was harmless.

The ALJ did not ask Plaintiff why she had not sought more aggressive treatment for these problems at her hearing.  (Tr. 85-100).  She also did not inquire as to whether Plaintiff had a good reason for her lack of medical treatment in making her decision on disability.  (Tr. 64-77). The ALJ did ask her about her source of income and how much she makes, but she did not inquire into whether this affected Plaintiff's ability to pay for medical treatment.  (Tr. 88).  Based on this information from the record, the ALJ did err in drawing an adverse inference from Plaintiff's lack of medical treatment because she never gave Plaintiff a chance to explain the lack of medical care.  *See Grier*, 117 F. Supp. 3d at 1344-45.

---

[3] Examples of good cause explanations include: the individual may not be able to afford the medical treatment, side effects prescription medication may make Plaintiff's condition less tolerable, or their symptoms may be treatable with over-the-counter medication. 1996 SSR LEXIS 4 at *22-23.

However, such an error is not reversible if an ALJ properly bases her determination on other factors. *Henry*, 802 F.3d at 1268. This is what occurred here. The ALJ considered a number of other factors in making her determination that Plaintiff was not disabled during the relevant time period. For example, the ALJ considered all of Plaintiff's medical treatment history and the opinions of all the doctors who treated or examined Plaintiff during the relevant period. (Tr. 64-77). She also considered the statements Plaintiff made about her condition in both her function report and hearing testimony. (*Id.*). In addition, she carefully analyzed Plaintiff's residual functional capacity, education, and previous work as well as the vocational expert's opinion to determine what, if any, jobs in the economy Plaintiff is able to perform. (*Id.*) It is apparent from the ALJ's opinion that she did not rely primarily or exclusively on Plaintiff's lack of medical treatment to make her determination.

**F.      The ALJ's Decision is Based on Substantial Evidence**

In order for a Vocational Expert's testimony to qualify as substantial evidence, the ALJ "must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Plaintiff argues that the ALJ posed a hypothetical to the Vocational Expert that did not include all of Plaintiff's limitations. (Pl.'s Mem. 36). Specifically, Plaintiff contends that the hypothetical was inaccurate because it "did not accurately state claimant's pain level or her residual functional capacity." (*Id.*). As already noted above, the ALJ considered Plaintiff's subjective pain testimony and properly discredited it. In terms of residual functional capacity, this court has examined the ALJ's hypothetical. The ALJ properly incorporated Plaintiff's hearing testimony, the opinion of Dr. Rozier, and the opinion of Dr. Davis to accurately state all of the limitations that Plaintiff has experiences. (Tr. 103). Therefore, the testimony of the Vocational Expert qualifies as substantial evidence and the

16

Vocational Expert's opinion that there are jobs in significant numbers which Plaintiff can perform was properly considered and adopted by the ALJ.  (Tr. 103-04).

**VII.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 2, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE